as it was, otherwise than as the possession of an intruder without any right. He himself seems in an honest moment, to have considered it in the same light, and solemnly agreed to give it up, if the bishop did not consent to his establishment as priest in that congregation.

I have no hesitation in saying, that the defendant has no right.

The next question is, whether the executors are the proper persons to make a lease on which to support an ejectment.

We have no court of Chancery in *Pennsylvania*, to superintend the execution of trusts. Perhaps it would have been proper to apply to the legislature, to vest the estate in trustees for the uses of the will of *Theodorus Browers*. As the case stands, no persons are more proper, as lessors, than the executors. They have a right to possession for some purposes, to build a tomb, &c. I have no inclination to look, with an eagle's eye, into every defect in point of form, when I am so clear, that the defendant has no right to possession. At any rate, I am not now prepared to say, that, on this ground, there ought to be a verdict for the defendant. If the executors be incompetent to make a lease, on which to support an ejectment, the defendant may obtain the deliberate opinion of this or a superior court. Now, I think, there ought to be a verdict for the plaintiff.

The jury found a verdict for the plaintiff.

---

# FAYETTE COUNTY,

## December Term, 1798.

### John Work *v.* Robert Grier.

CASE, on a contract, made 11th *February*, 1797, of sale of a plantation and mill, for falsely, fraudulently, and deceitfully affirming, that the mill-dam was found, sufficient, and founded on a rock; trusting to which the plaintiff purchased the plantation and mill for 1500*l.* whereas the mill-dam was then unsound, insufficient, not founded on a rock, and great part of it without foundation.

Of the price 600*l.* was paid at the time of the con- 1798.
tract, and bonds given for the reft, in yearly payments.
There was no article of the fale. But on the bond laft
due, payable in the year 1800, the following writing
was indorfed, figned and fealed by the parties.

" P. S.—This obligation is fubject to the following
ftipulation, viz. that, if the mill-dam, for the payment
of which this bond is a part, fhould happen to break,
by reafon of a bad foundation only, a deduction of the
fum of one hundred pounds is agreed upon in lieu there-
of, in favour of faid *Work.* It is alfo agreed, that the
faid *Work* is to ufe all lawful endeavours and cofts, in
order to prevent any breach about faid dam, by keeping
it fufficiently dirtied, and free from fuch fymptoms as
might occafion the fame."

A witnefs was called to prove the reprefentation, at
the time of the contract.

*Campbell* and *Pentecoft*, for the defendant, objected to
parole teftimony, as the parties had reduced the agree-
ment to writing, agreed on the rifk, and fixed the amount
of damages, to be deducted out of the laft bond, if, be- 1*Fonbl.*141-4.
fore it became due, the dam fhould break. He can get
no other damages, but the fum fo ftipulated for.

*Young, Lyon,* and *Galbraith,* for the plaintiff. The ob-
jection is made on a *petitio principii.* This indorfement
is not a note of the contract. It is a fort of poftfcript
to a bond for the payment of the price, providing for a
compenfation for a certain contingency, not relating to
the effential part of the contract, that the dam was
founded on a rock. In cafes like this, as on policies of
infurance, parole evidence of want of good faith is con-
ftantly admitted, as evidence of facts, within the know-
ledge of the infured, increafing the rifk.

Contracts will not be inforced, where there is igno- 1*Fonbl.* 106.
rance or error, in fact or in law; and will be fet afide *Kaim's Prin.*
for fraud. There could be no relief againft fraud, un- *Eq.* 86, 259.
lefs parole evidence of it were admitted.

PRESIDENT. If this writing had been a ftatement of
the contract, there would have been ftrong reafons for
rejecting parole teftimony of the reprefentation; as,
when parties reduce their converfations to writing, that
alone ought to be confidered as the deliberate and con-

*B b* 3

clufive agreement. This writing does not clearly feem to be a ftatement of the contract. The action is for a fraud in mifreprefenting a thing within the knowledge of the feller, and not of the buyer; in reprefenting the dam as founded on a rock, when it was not. The foundation might not be *bad*, though not founded on a rock. The writing is to fecure a certain compenfation, on the contingency of the dam breaking within three years, by reafon of a bad foundation only. The dam might not break within that time, though not founded on a rock; and yet might be much lefs valuable to the buyer, than if founded on a rock.

Parole evidence of a contract may be inadmiffible, when a contract is reduced to writing; and yet parole evidence of fraud may be given, of what cannot appear in the writing, viz. the variance of the thing fold from the reprefentation made of it in the contract.

The principal difficulty in this cafe is, to know whether the writing means the fame thing by *a bad foundation*, that the declaration means by *not being founded on a rock*; and whether providing compenfation for the dam breaking, by reafon of a bad foundation, is not waving all other objections to the dam.

Upon the whole, we think it beft, to admit the teftimony, and referve the point.

It was then proved, that, at the time of the fale, *Work* had fufpicions, that the dam was infufficient, and objected to it, for want of an apron; that *Grier* faid, it was as good a dam as any on the creek, that there was no occafion for an apron, for it was founded on a rock, and that was better than an apron. It had been founded on a rock; but the fall of the water over the dam had broken through the rock, for a confiderable diftance in the middle of the creek, and occafioned a cavity, through which a confiderable part of the ftones in the dam had fallen and been wafhed away, fo that part of the dam was hollow. It had not however given way, and it was uncertain whether it would, merely on that account. That would depend on cafualties, as ice lodging on the breaft, &c. This ftate of the dam was not generally known, till in the fummer after the fale; but there was fome reafon to believe, that it was in this ftate, at the time of the fale, and probably that *Grier* knew

it. The dam continued to serve its purpose, and the mill went, when other mills on that creek went. _1798._

*Young,* for the plaintiff. An action lies for cheating by false dice, and for selling one commodity instead of another. Fraud or concealment of any material circumstance will be relieved against, notwithstanding a warranty. *3 Com. 166. 1 Bro. Chan. 440. 1 Fonbl. 134.*

*Campbell,* for the defendant. 1. Fraud will not be presumed. You have no evidence, that the dam was not, at the time of the sale, as represented. All the evidence is five or six months after. If there was a misrepresentation, every misrepresentation will not justify the rescinding of a solemn contract. To do this, it must be wilful, and known to the party. *1 Fonbl. 109, 10.*

2. Here is a written agreement entered into at the time of the sale, for ascertaining the damages, in case the representation should fail. *Work* had no confidence in the representation of *Grier,* and relied on this agreement for fixed damages to be obtained at a certain future time. *2 Powel Contr. 208.*

*Young.* We differ not as to principles of law; but as to the weight of evidence. The cases read apply not to this. We are not suing for a penalty, nor for rescinding the contract, and recovering back the money paid, but for damages for a misrepresentation which has made *Work* pay a greater price, than he would have paid, if the dam had been truly described.

PRESIDENT. If there be a wilful misrepresentation, or concealment of any material circumstance, this is a fraud, and damages must be given, proportioned to the consequences of the buyer's confidence in the assertion of the seller. *2 Powel Contr. 203.*

If, though there be no wilful misrepresentation or concealment, there be an undertaking, at the time of the sale, that the property sold is such, as, in a material circumstance, it turns out not to be, damages must be given.

But we would impress it strongly on you, that a presumption of great force arises from the writing, that *Work* took on himself all risks, except that of the dam breaking in three years, by reason of a bad foundation; and, for that risk, has measured his damages, and settled the mode of compensation. *B b 4*

The jury found a verdict for the plaintiff for 312*l.* 10*s.*

NOTE.—This cafe had been tried at the preceding term, and a verdict found for the plaintiff: but the jury faid, they could not afcertain the damages. At the fubfequent term, there was a motion for a new trial, which, without any *interference of the court,* was ended by a compromife.